STATE OF NEBRASKA, APPELLEE, v. DWIGHT M. WEST, APPELLANT.

198 N. W. 2d 204

Filed June 9, 1972. No. 38271.

Joseph D. Martin and Robert Paulick, for appellant.

Clarence A. H. Meyer, Attorney General, and Harold Mosher, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

SMITH, J.

Dwight M. West pleaded guilty to a charge of injuring property, causing damage in excess of $100. The district court sentenced him to imprisonment for an indeterminate period of 1 to 2 years. Dwight appeals. He assigns excessiveness of the sentence for error.

Dwight, age 19, hurled a bottle through the window of a jewelry store. The offense was premeditated in the sense that Dwight did not act on the spur of the moment. He held a grudge against the "establishment because of the way they involved me and my (older) brothers." Brothers "Doug" and "Dan," as well as Dwight, had been arrested for burglary; and "Dave," for making a "false" telephone call. At the time of the offense Dwight was free on bond on the burglary charge.

Dwight was single, living with his mother and three younger siblings. He contributed $20 to $30 a month irregularly to their support. His mother was gainfully employed and was paid Social Security benefits. His employment on a construction project ended in July 1971, upon completion of the project.

Dwight had been graduated from high school. He was to be matriculated in Hastings Technical College in September 1971 for a 2-year course in data processing.

Prior offenses committed by Dwight were 3 traffic violations, petty larceny 1 ½ years earlier, and receiving stolen property 5 months earlier. Questioned concerning prior alleged acts of vandalism and larceny, Dwight unequivocally denied participation.

Hearings were held on February 26, May 7, May 17, and July 28, 1971. Dwight withdrew a plea of not guilty and pleaded guilty on May 17. His former counsel, Lloyd Kelly, Sr., had withdrawn on May 7.

At the May 7 hearing Kelly said: ". . . he's charged in breaking something a little over $100. He thought it was a little less." Dwight volunteered, "Sir it was only $109." He also said that he had obtained an estimate from the Watton Glass Company. Counsel for the State said that the window damage was $109.96. Restitution in full had been made prior to the hearing on February 26. The amount, $200, included $109 for the window, $50 which was the retail price of a wooden replica of a boat with a damaged stern and a chip, $25 "bonus," and something for damage to the burglar alarm system. The amount was paid by Dwight's mother for him.

At the sentencing hearing on July 28, Dwight testified as follows: "Q. Do you recall the last time you were in this court with Mr. Kelly? A. Yes, sir. Q. You had a receipt with you, did you not? A. Yes, sir; I did. Q. Did you at that time advise the court that the damages were less than $100? A. Yes, sir. That receipt—that wasn't a receipt, it was an estimate. Mr. Kelly advised me to go to Watton Glass Company to get an estimate, which I did. I took the measurement of the Brodkey window. I got an estimate of $69. . . . Q. However, you did not advise the court of the additional damages you paid? A. The additional—the

damages the court had me charged with was the window. I paid for the window. The other payments I made was bonus."

During the cross-examination the court intervened: "What you are saying, Mr. Kelly told you to show the court the $67 bill? Yes, sir; he told me to get an estimate and present it before the judge." Allocution followed immediately, and Dwight answered, "No, sir." The court then imposed sentence, the record being as follows: "THE COURT . . . Mr. West, you may wonder why (the court imposed imprisonment). You have been less than honest with this court in presenting to me a bill that was not correct. You have been less than honest in the statements here in connection with the payment of damages . . . . If there is ever a time to be absolutely honest it's when you are in the courtroom under oath and before the judge. When you can't be that, you couldn't be to the probation officer. THE DEFENDANT: Sir — THE COURT: Mr. Bosler, you can take him over to the jail. THE DEFENDANT: Your Honor, I was honest. I was always honest to the court. THE MOTHER: What was he dishonest about? THE COURT: You will be right over with him. I don't want any words with you, Mrs. West. THE DEFENDANT: Mom, come on."

In overruling the motion of Dwight for a new trial on August 13, 1971, without the presence of Dwight, the court said to defense counsel: "The situation here was so premeditated, they circled the block three times before they committed this act."

Dwight had acknowledged damage in the sum of $109 on May 7 and prior to withdrawal of his plea of not guilty. A lack of veracity on his part is unproved.

If malicious destruction or injury to property is less than $100, the offense is a misdemeanor. § 28-573, R. R. S. 1943. If the destruction or injury amounts to $100 or more, the offense is a felony punishable by imprisonment not less than 1 year nor more than 3

years, or by a fine not more than $1,000.    § 28-572, R. R. S. 1943.

This court may reduce a sentence when in its opinion the sentence is excessive.    In such case the court is under a duty to render such sentence as the evidence warrants.    See § 29-2308, R. R. S. 1943.

A variable relating to the criminal process is anomie. It means "a condition of society in which its members feel that normative standards of conduct and belief are lacking.    The aspect . . . is . . . a feeling on the part of the public that government is permitting certain community values and norms to deteriorate. . . . When government . . . assumes the role of protecting the community from such conduct, it also assumes the role of guardian of the . . . norm that is to be protected from attenuation by that conduct. . . . If the state . . . does not demonstrate an interest in enforcing it, the public—should it feel strongly about the norm—will become anxious. . . . The public will then focus upon the avowed protector of the norm as the cause of its anxiety and unrest and the result will be lack of faith in government with all the ramifications that may follow." New York Governor's Special Committee on Criminal Offenders, "The Penal System:    Treatment as Prevention," Gerber & McAnany, Contemporary Punishment 256-7 (1972).    Cf. § 29-2260 (2) (c), R. S. Supp., 1971. Anomie is a variable not to be forgotten, although its weight is light in any one case.

Another variable is the emotion of the judge in determining and pronouncing the penal sanction.    Should we deny its existence altogether, the illusion might cheat the reader.    See Frank, Courts on Trial, 405-15 (1969). On the other hand, a sentence dictated by inordinate emotion is suspect.    It is only by coincidence that it finds support in the evidence.    See A. B. A., Standards Relating to Appellate Review of Sentences, § 1.2, p. 23 (Approved Draft, 1968).    At a sentencing hearing it is especially important that the judge steel himself

against predilection. Otherwise he may fuel the raging. fire in youth against "the establishment."

The coincidence of a sentence dictated by inordinate emotion but warranted by the evidence happened in the present case. The judgment is affirmed.

AFFIRMED.

BOSLAUGH and NEWTON, JJ., concur in result.

NEWTON, J., concurring.

I concur in the result arrived at in the opinion of. Smith, J. In my judgment the reasoning by which a sentencing judge arrives at a decision to pronounce a certain sentence is neither material nor relevant to a consideration of the sentence on appeal. In determining whether a sentence is excessive, or just and proper, this court must look solely to the record.